Filed 5/29/13  Bagheri v. Adeli-Nadjafi CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| EBRAHIM BAGHERI et al.,<br><br>Cross-Defendants and Appellants,<br><br>v.<br><br>NAZILA ADELI-NADJAFI,<br><br>Cross-Complainant and Respondent. | B239551<br><br>(Los Angeles County<br>Super. Ct. No. PC047981) |

APPEAL from an order of the Superior Court of Los Angeles County, Melvin D. Sandvig, Judge.  Reversed and remanded.

Brian K. Jacobs for Cross-Defendants and Appellants.

Ghods Law Firm, Mohammed K. Ghods, William A. Stahr and Ruben Escobedo III, for Cross-Complainant and Respondent.

_____

Appellants Ebrahim Bagheri and Ghamar Fazlelahi appeal from the order entered in favor of respondent Nazila Adeli-Nadjafi denying appellants' anti-SLAPP motion as untimely because the motion, filed by facsimile, was not printed until after the clerk's office closed for the day. Appellants claim the trial court erred in finding their motion untimely. In addition, appellants assert the trial court erred in denying their *nunc pro tunc* motion without reviewing its merits. As will be explained, the trial court erred when it found appellants' anti-SLAPP motion was untimely. There is no clear definition of when a filing via facsimile (fax) has been received by the clerk's office. The ambiguity in the rules leads to conflicting interpretations. In addition, appellants presented evidence that they transmitted the motion prior to 4:30 p.m. via their fax transmission report and there was no evidence respondent suffered prejudice as a result of appellants' filing. Accordingly, we reverse and remand to the trial court.

## *FACTUAL AND PROCEDURAL BACKGROUND*[1]

Appellants filed a complaint against respondent alleging breach of contract, intentional misrepresentation, intentional infliction of emotional distress, negligence, accounting, and nuisance. Respondent filed a cross-complaint against appellants alleging causes of action for invasion of privacy, intentional infliction of emotional distress, defamation, and nuisance. Respondent served their cross-complaint on August 29, 2011.

### Anti-SLAPP Motion

Appellants prepared a 27 page anti-SLAPP motion in response to respondent's cross-complaint. Pursuant to Code of Civil Procedure section 425.16, the deadline for appellants to file an anti-SLAPP motion to respondent's cross-complaint was on November 2, 2011 – 65[2] days from the date of service of the cross-complaint.

---

[1]     We describe only the facts necessary to reach a determination on the timeliness of the motion to strike.

[2]     The 65 days is the total of 60 days afforded by Code of Civil Procedure section 425.16, subdivision (b), and the additional five days when service is done by mail under Code of Civil Procedure section 1013, subdivision (a).

Appellants submitted the anti-SLAPP motion to the Chatsworth Courthouse Clerk's Office on November 2, 2011, via facsimile. The fax began its transmission from appellants' fax machine at 4:05 p.m. and according to the transmission report from the appellants' fax machine, the transmission was completed at 4:09 p.m. The clerk's office closes for business at 4:30 p.m. Pursuant to Los Angeles County Superior Court Local Rule 2.22(b)(2), any fax received after close of business is filed the next business day. (Local Rule 2.22(b)(2).) There is no evidence in the record of the exact time that the fax machine in the clerk's office received the transmission of the motion from appellants' fax machine or of the time the machine in the clerk's office completed printing the motion. However, the copy of the motion in the superior court record contains a notation from the clerk's office: "Nov. 03 2011 filed by FAX" and a file stamp indicating that the document was filed on November 3, 2011.

Respondent objected and opposed the anti-SLAPP motion arguing it was untimely because it was filed after the November 2, 2011 deadline. In their reply appellants argued that although the motion was filed one day late, the trial court should decide the merits of the motion because the reason for the delay in filing was a "traffic jam" in the receiving court's fax machine and because respondent had not articulated any prejudice as a result of the late filing. Appellants attempted to resolve the issue of their untimely motion, by filing a nunc pro tunc motion requesting the trial court order that the date of filing be changed to November 2, 2011. On January 5, 2012, respondent filed her formal opposition to the nunc pro tunc motion.

**The Hearing**

At the hearing held on January 18, 2012, the trial court denied the anti-SLAPP motion as untimely because it was not filed within the proper time limit; the nunc pro tunc motion was denied for the same reasons. Appellants filed this timely appeal.

### DISCUSSION

This appeal centers on two issues: (1) whether the trial court properly rejected the anti-SLAPP motion as untimely; and (2) whether the trial court properly rejected the

3

nunc pro tunc motion. As we shall explain, the court erred in rejecting appellants' motion on the grounds it was untimely filed.

## I. Anti-SLAPP Motion

The California Rules of Court (CRC) provide available procedures and requirements for the filing of motions via facsimile. CRC rule 2.304(a) provides that a party can file by facsimile if the court in which the document is to be filed allows it. (CRC rule 2.304, subd. (a).) CRC rule 2.304(a) also provides that the local rule governing filing by facsimile "must state that direct fax filing may be made under the rules of [court]." (*Ibid.*) "Absent statewide directions to the contrary, each court determines when it accepts documents for filing, and it may apply those deadlines created by its existing rules to filings made by fax." (*Rosenberg v. Superior Court* (1994) 25 Cal.App.4th 897, 900.) In Los Angeles County Superior Court under the local rules of court, any facsimile *received* after 4:30 p.m. will be deemed received as of the next business day. (L.A. Co. Sup. Ct., L.R. 2.22(b)(2); emphasis added.) The local rule does not define the term received.

Here the trial court interpreted the word "received" in Local Rule 2.22(b)(2) to mean the fax must be printed by the machine in the clerk's office before it can be received by the clerk: "[B]oth CRC 2.304(d) and LR 2.22(b)(2) use the term 'received' to trigger the filing date of a doc[ument] submitted to the court by fax. As pointed out in the opposition, it would not make sense to require the Clerk's Office to file a doc[ument] transmitted by fax which has not yet been printed/received [because] there would be nothing tangible to file."

At one time it might have been appropriate to construe the term "received" narrowly to mean that the document must be printed and in the "hands of the clerk." (See *Tregambo v. Comanche Mill & Mining Co.* (1881) 57 Cal. 501 [holding a document is not received by the court until it is in the hands of the clerk].) However, the "hands of the clerk" rule no longer reflects practical reality or modern technology allowing for "e-filing" and fax filing. Thus, we have several concerns about the trial court's interpretation of Local Rule 2.22(b)(2) and in particular of the term "received." First

4

nothing in the California Rules of Court supports the narrow definition of the term. The California Rules of Court do not require that a document filed by facsimile actually be printed to qualify as received. CRC rule 2.301(4) defines "fax filing" as "the fax transmission of a document to a court that accepts such documents." (CRC rule 2.301(4).) CRC rule 2.301(2) defines a fax transmission "as the transmission of a document by a system that encodes a document into electrical signals, transmits these electrical signals over a telephone line, and *reconstructs the signals to print* a duplicate of the original document at the receiving end." (CRC rule 2.301(2).) Consequently to qualify as a fax transmission under the CRC, the electronic signals of the document must be *reconstructed* (in the fax machine of the receiving party) *to* print. The definition does not require that the document *be* printed by the fax machine.[3]

Second, the trial court's construction of the term "received" fails to account for the possibility that a fax transmission could be received by the clerk's fax machine prior to 4:30 p.m., but unable to print until after 4:30 p.m. because the document was effectively "waiting in line" in the machine's queue behind other documents to be printed. Local Rule 3.4(a) addresses this possibility for those filing documents in person. Local Rule 3.4(a) allows a party filing in person to complete their filing after 4:30 p.m. so long as the filer is inside the clerk's office prior to 4:30 p.m. (L.A. Co. Sup. Ct., L.R. 3.4(a).) This rule allows those people "waiting in line" when the office closes the opportunity to file their documents even if they are unable to reach the clerk's window prior to 4:30 p.m.

---

[3] The rules concerning "service" by facsimile provide an interesting comparison. Service by fax is complete on *transmission* of the entire document to the receiving party's fax machine. Service that is completed after 5:00 p.m. is deemed to have occurred on the next court day. (CRC rule 2.306(g); emphasis added.) The significant distinction between the rules for service by fax and filings by fax is the reference to when service is complete. The use of transmission in the requirement refers to the definition provided in CRC rule 2.301 as when the sender's machine completes sending its document. (CRC rule 2.301(2).) Thus, service by fax is complete upon *transmission*, while filing requires *receipt* by the clerk's machine. CRC rule 2.304(d) provides for a fax transmission report to be printed to indicate when the sending party's machine completed the transmission. There is no such rule in regards to when the clerk's office has *received* the transmission.

Here the trial court's narrow interpretation of "received" denies fax filers the benefit afforded those who file documents in person.[4]

In addition, the trial court's rejection of the motion was unwarranted in this case given that appellants' demonstrated they timely began transmitting the document from their fax machine at 4:05 p.m. and that the transmission was complete by 4:09 p.m. Furthermore there is no evidence in the superior court record of the exact time the facsimile machine in the clerk's office received the document. There is no transmission report from the clerk's office fax machine nor is there any notation on the face of the motion indicating the date or time when the fax machine received or printed the document. Thus there is no objective or independent evidence from which one can verify when the document was received by the clerk's office. From appellants' perspective there was nothing more they could do to demonstrate the timeliness of their filing.

Finally, respondent has not demonstrated any prejudice by the late filing of appellants' motion. In fact, respondent reserved her right to oppose the anti-SLAPP motion on the merits in the event the trial court granted leave to appellants to file their motion. The respondent has not articulated, nor did the trial court offer, any sound reason for rejecting the motion on the technicality of when it was filed.[5]

---

[4] While we do not agree with the trial court's interpretation of the word "received" in the context of fax filings, we also note concerns about appellants' construction of the fax filing rule. Appellants contend the time transmission is complete from their office, here, 4:09 p.m., should determine whether the motion has been timely filed. Several issues arise with this interpretation. There is no way for the clerk's office to know when the facsimile is finished transmitting from the sender's fax machine. To the knowledge of this court, the clerk's office must rely on the time stamp, if any, associated with the printing of the fax on its machine. As there are many different fax machines, there are differing references by the time stamps printed on the received copy—either the time of receipt or the time of printing. Thus, the appellants' interpretation does not provide sufficient guidance for the clerk. Rather it creates uncertainty for the clerk and would most certainly invite a *nunc pro tunc* motion for all filings made via fax at or near the time the clerk's office closes for business each day.

[5] Likewise the length of the motion does not provide an independent ground for denying the anti-SLAPP motion. Respondent also asserted that the trial court properly

Accordingly, in view of the totality of these circumstances and in light of the long standing preference and policy to determine matters on their merits (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478 ["[i]t is the policy of the law to favor, whenever possible, a hearing on the merits"]), we conclude that the trial court abused its discretion in denying appellants anti-SLAPP motion on the grounds that it was untimely.[6]

## *DISPOSITION*

The order is reversed and remanded to the trial court to conduct further proceedings in accord with the views expressed in this opinion.  Upon remand, respondent should be allowed the opportunity to file and serve an opposition to the anti-SLAPP motion on the merits, and appellants should be afforded an opportunity to file a reply.

Appellants are entitled to their costs on appeal.


**WOODS, J.**


**We concur:**



**PERLUSS, P. J.**                                                        **ZELON, J.**

---

rejected appellants' anti-SLAPP motion based on its length because it exceeded the page limited in Local Rule 2.22(b)(8).  We do not agree.  Local Rule 2.22(b)(8) sets a limit of 10 pages for fax filings for exhibits, declarations, or other *attachments*.  (L.A. Co. Sup. Ct., L.R. 2.22(b)(8); emphasis added.)  The trial court deemed appellants' anti-SLAPP motion in excess of this limit.  However, appellants' 27-page motion contained only four pages of additional documentation, well under the 10-page limit.

[6]     In light of our conclusion we do not reach the merits of the arguments regarding the nunc pro tunc motion.

7